UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | No. 1:23-cr-00166-JMS-TAB |
| *vs.* ) | |
| ) | |
| THEDELL POLK, ) | -01 |
| ) | |
| *Defendant.* ) | |

# ORDER

On November 8, 2023, the Government filed an Indictment against Defendant Thedell Polk, charging him with three counts of Distribution of Controlled Substances in violation of 21 U.S.C. § 841(a)(1) (Counts 1-3); one count of Possession With Intent to Distribute Controlled Substances in violation of 21 U.S.C. § 841(a)(1) (Count 4); one count of Use or Carry of a Firearm During and in Relation to a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c) (Count 5); and one count of Unlawful Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1) (Count 6). [Filing No. 1.] Mr. Polk has filed a Motion to Dismiss, [Filing No. 29], in which he requests dismissal of Count 6. His motion is ripe for the Court's consideration.

## I.
### BACKGROUND

In Count 6, the Indictment charges Mr. Polk with Unlawful Possession of a Firearm by a Felon in violation of 18 U.S.C. § 922(g)(1) based on Mr. Polk's previous convictions for:

- Dealing Cocaine in Madison County, Indiana, Cause No. 48D01-0201-FB-000050, on February 10, 2003;

- Robbery and/or Confinement and/or Theft in Madison County, Indiana, Cause No. 48D01-0110-CF-000498, on April 11, 2002; and

- Battery in Madison County, Indiana, Cause No. 48D01-9610-DF-000242, on August 18, 1997.

[Filing No. 1 at 4.]  Mr. Polk now seeks dismissal of Count 6.  [Filing No. 29.]

## II.
### STANDARD OF REVIEW

A defendant may move to dismiss counts in an indictment for failure to state an offense under Federal Rule of Criminal Procedure 12(b)(3)(B).  One basis for a Rule 12(b)(3)(B) motion to dismiss is that the charged offense is based on an unconstitutional statute.  *See, e.g.*, *United States v. Posey*, 655 F. Supp. 3d 762, 766 (N.D. Ind. 2023).  Here, Mr. Polk brings an as-applied challenge to § 922(g)(1).  [*See* Filing No. 29 at 1 ("[Mr.] Polk contends that…§ 922(g)(1) as applied to him is unconstitutional and violates the 2nd Amendment to the United States Constitution.").]

## III.
### LEGAL FRAMEWORK

The Second Amendment to the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  18 U.S.C. § 922(g)(1), the statute which Mr. Polk is charged with violating in Count 6, makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year…to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  Cases analyzing the constitutionality of laws other than § 922(g)(1) have shaped the legal framework within which the Court will analyze Mr. Polk's argument that § 922(g)(1) violates the Second Amendment, and the Court traces the evolution of that framework below.

In 2008, the United States Supreme Court considered the constitutionality of a District of Columbia law banning handgun possession by making it a crime to carry an unregistered firearm and also prohibiting the registration of handguns. *District of Columbia v. Heller*, 554 U.S. 570, 575 (2008). The Supreme Court found that the law was unconstitutional, recognizing an individual's Second Amendment "right of law-abiding, responsible citizens" to possess handguns for self-defense in their homes. *Id.* at 635. It noted that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill," which it recognized as "presumptively lawful regulatory measures." *Id.* at 626-27. It held that the plaintiff could legally possess a handgun if he was "not disqualified from the exercise of Second Amendment rights," including that he was "not a felon." *Id.* at 631-35; *see also McDonald v. Chicago*, 561 U.S. 742, 786 (2010) ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons and the mentally ill.").

After *Heller*, the Seventh Circuit elucidated a two-step inquiry when considering whether a law violates the Second Amendment:

> First, the threshold inquiry…will be a "scope" question: Is the restricted activity protected by the Second Amendment in the first place? The answer requires a textual and historical inquiry into original meaning.
>
> \*          \*          \*
>
> [I]f the historical evidence is inconclusive or suggests that the regulated activity is not categorically unprotected – then there must be a second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights. [This] requires the court to evaluate the regulatory means the government has chosen and the public-benefits end it seeks to achieve….[T]he rigor of this judicial review will depend on how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right. [B]roadly prohibiting laws restricting the core Second Amendment right…are categorically unconstitutional. For all other cases, however, we are left to choose an appropriate standard of review from among the heightened standards of scrutiny

the Court applies to governmental actions alleged to infringe enumerated constitutional rights; the answer to the Second Amendment "infringement" question depends on the government's ability to satisfy whatever standard of means-end scrutiny is held to apply.

Ezell v. City of Chicago, 651 F.3d 684, 702-03 (7th Cir. 2011) (quotations and citations omitted).

In 2022, the Supreme Court refined its analysis of statutes implicating the Second Amendment when it decided New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022). There, the Supreme Court considered whether a New York law requiring individuals to have a license in order to carry a handgun in public violated the Second Amendment and found that the two-step approach set forth by the Circuit courts – including the Seventh Circuit in *Ezell* – in analyzing the issue was "one step too many." Id. at 19.  It held that:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  To justify its regulation, the government may not simply posit that the regulation promotes an important interest.  Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.  Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

Id. at 17 (quotation and citation omitted).

Just over two months ago, the Supreme Court considered whether 18 U.S.C. § 922(g)(8), which prohibits an individual who is subject to a domestic violence restraining order from possessing a firearm, violates the Second Amendment in United States v. Rahimi, 602 U.S. ----, 144 S. Ct. 1889 (June 21, 2024).  The *Rahimi* Court refined its approach to the question of whether a statute is consistent with historical tradition, stating:

> [S]ome courts have misunderstood the methodology of our recent Second Amendment cases.  These precedents were not meant to suggest a law trapped in amber….  [T]he Second Amendment permits more than just those regulations identical to ones that could be found in 1791.  Holding otherwise would be as mistaken as applying the protections of the right only to muskets and sabers…. [T]he appropriate analysis involves considering whether the challenged regulation

is consistent with the principles that underpin our regulatory tradition. A court must ascertain whether the new law is relevantly similar to laws that our tradition is understood to permit, applying faithfully the balance struck by the founding generation to modern circumstances…. Why and how the regulation burdens the right are central to this inquiry. For example, if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations. Even when a law regulates arms-bearing for a permissible reason, though, it may not be compatible with the right if it does so to an extent beyond what was done at the founding. And when a challenged regulation does not precisely match its historical precursors, it still may be analogous enough to pass constitutional muster. The law must comport with the principles underlying the Second Amendment, but it need not be a "dead ringer" or a "historical twin."

*Id.* at 1897-98 (quotations and citations omitted).

It is within this legal framework that the Court considers Mr. Polk's arguments.

### IV.
### DISCUSSION

In support of his Motion to Dismiss, Mr. Polk asserts that § 922(g)(1) is unconstitutional as applied to him. [Filing No. 29 at 1.] He focuses on *Rahimi* along with two other cases – *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024) and *United States v. Holden*, 638 F. Supp.3d 931 (N.D. Ind. 2022), *rev'd on other grounds*, 70 F.4th 1015 (7th Cir. 2023). [Filing No. 29 at 2-7.] He asserts that the Ninth Circuit in *Duarte* recognized a "strong presumption that the text of the Second Amendment confers an individual right to keep and bear arms that belongs to all Americans, not an unspecified subset" and that the right "belongs not to just the virtuous people but to everyone including felons." [Filing No. 29 at 2 (quotations and citations omitted).] Mr. Polk points to the Ninth Circuit's analysis in *Duarte* of the historical tradition of firearm regulation, noting its holding that "the fact that the Founding generation had no laws limiting gun possession by…people convicted of crimes means that the lack of a…historical regulation that is distinctly similar to § 922(g)(1) is strong if not conclusive evidence that the law is inconsistent with the Second Amendment." [Filing No. 29 at 3 (quotations, citations, alterations, and emphasis

- 5 -

omitted).] Mr. Polk then focuses on *Holden*, asserting that the United States District Court for the Northern District of Indiana dismissed a charge under § 922(n) as unconstitutional and that the Seventh Circuit "reversed the dismissal but for reasons having nothing to do with the *Bruen* analysis." [Filing No. 29 at 5.] As to *Rahimi*, Mr. Polk argues that it was critical to the Supreme Court's holding that Mr. Rahimi's restriction (being under a restraining order for a domestic violence conviction) was not permanent, but that Mr. Polk's restriction is permanent. [Filing No. 29 at 6.] Mr. Polk also contends that, unlike Mr. Rahimi, "[n]o court has placed a restraining order against [him] finding he is a threat to the physical safety of others." [Filing No. 29 at 6.]

In its response, the Government argues that felons are not among "the People" protected by the Second Amendment and traces laws that it argues reflect the Nation's historical tradition of "laws categorically disarming groups considered untrustworthy adherents to the law and laws punishing felons." [Filing No. 32 at 9-25.] It asserts that Mr. Polk's as-applied challenge to § 922(g)(1) fails because he is a convicted felon, "[t]wo of his past felonies are violent, namely Robbery and Battery," "[a]nother conviction involves drug dealing," and he is "a non-law-abiding citizen." [Filing No. 32 at 25.] The Government contends that "[t]he relevant question is whether the status at issue indicates that the person cannot be trusted to possess a gun without posing a risk to the public, not whether a particular person can be trusted to do so," and that "[i]ndividualized assessments could also yield wildly disparate results." [Filing No. 32 at 26.] It argues that it is difficult to resolve as-applied challenges before trial if the facts underlying the crime itself are relevant, since "the opportunity for pre-trial fact-finding is limited by Federal Rule of Criminal Procedure 12." [Filing No. 32 at 27.]

Mr. Polk did not file a reply.

The Court analyzes Mr. Polk's arguments keeping in mind the Supreme Court's most recent guidance set forth in *Rahimi* – specifically, that "[a] court must ascertain whether the new law is relevantly similar to laws that our tradition is understood to permit, applying faithfully the balance struck by the founding generation to modern circumstances," and that "[t]he law must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.'"  *Rahimi*, 144 S. Ct. at 1898.

In *Rahimi*, the Supreme Court found that § 922(g)(8), which prohibits an individual from possessing a firearm when they are subject to a domestic violence restraining order and pose "a credible threat to the physical safety" of a protected person, does not violate the Second Amendment because "the Second Amendment permits the disarmament of individuals who pose a credible threat to the physical safety of others."  144 S. Ct. at 1898.  The *Rahimi* Court traced the history of firearms regulations, recognizing a pattern of prohibiting those that are a danger to others from possessing firearms.  *Id.* at 1899-1901 (noting that the Militia Act of 1662 authorized the King's agents to "seize all Armes in the custody or possession of any person…judge[d] dangerous to the Peace of the Kingdom" and that surety and "going armed" laws "confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed").  The *Rahimi* Court concluded that § 922(g)(8) was "relevantly similar" to these historical laws "in both why and how it burdens the Second Amendment right," and noted that the regulation struck down in *Bruen* "broadly restrict[ed] arms use by the public generally," while § 922(g)(8) does not.  144 S. Ct. at 1901.

The Court finds that the Supreme Court's reasoning in *Rahimi* applies with equal force to § 922(g)(1).  The *Rahimi* Court recognized the Nation's tradition of regulating individuals "who present a credible threat to the physical safety of others" from possessing firearms, 144 S. Ct. at

1902, and the passage of § 922(g)(1) implies a recognition that felons are threatening. Moreover, the *Rahimi* Court explicitly recognized that "many…prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" 144 S. Ct. at 1902 (quoting *Heller*, 554 U.S. at 626-27 n.26).

The Court acknowledges that the Ninth Circuit in *Duarte* and the Northern District of Indiana in *Holden* reached the opposite result, but those decisions – neither of which are binding on this Court in any event – were issued before the Supreme Court's decision in *Rahimi*. Additionally, *Holden* involved a challenge to 18 U.S.C. § 922(n), which prohibits a person who is under indictment for a crime punishable by imprisonment of more than one year from shipping or transporting in interstate or foreign commerce any firearm. Mr. Polk challenges § 922(g)(1), which applies to individuals who have already been convicted of a felony. As discussed above, the prohibition on those already convicted of a felony fits well within the Nation's history of firearms regulation.

The Court also recognizes Mr. Polk's two arguments against applying *Rahimi* to his § 922(g)(1) challenge – that his restriction as a felon is permanent, unlike Mr. Rahimi being subject to a domestic violence restraining order, and that Mr. Rahimi was found to pose a credible threat to the safety of another, and he has not been subject to such a finding. Neither of these difference warrant this Court's departure from applying *Rahimi* to § 922(g)(1). First, while the *Rahimi* Court noted that "Section 922(g)(8)'s restriction was temporary as applied to Rahimi" because it "only prohibits firearm possession so long as the defendant is subject to a restraining order," 144 S. Ct. at 1902 (quotations and citations omitted), so too is Mr. Polk's restriction. Just as the subject of a restraining order can seek relief to no longer be subject to the order, Mr. Polk can seek expungement of his felony conviction. *See United States v. Vaughns*, 2023 WL 8258575, at *7

(N.D. Ill. Nov. 29, 2023) (holding that § 922(g)(1) does not violate the Second Amendment and noting that "felons may regain their right to possess firearms if they were pardoned or their conviction was expunged" and that "[t]he statutory scheme also leaves open the possibility for felons to seek administrative relief and regain their right to bear arms").  Second, while Mr. Rahimi was explicitly found to pose a credible threat to the safety of another, the Court notes that the very passage of § 922(g)(1) reflects Congress's recognition that felons pose a threat to the public safety.  Moreover, Mr. Polk's prior convictions for robbery and battery, which are relevant to his as-applied challenge to § 922(g)(1), certainly demonstrate that he is a threat to public safety in any event.

Relying on *Rahimi*, the Court finds that § 922(g)(1) is "relevantly similar to laws that our tradition is understood to permit" and "comport[s] with the principles underlying the Second Amendment," *Rahimi*, 144 S. Ct. at 1897-98, so it does not violate the Second Amendment.  *See also United States v. Lee*, No. 1:23-cr-00103-JRS-MJD-1, Dkt. 92 at 9 (S.D. Ind. July 9, 2024) (rejecting Second Amendment challenge to § 922(g)(1) and stating that the *Rahimi* analysis "is just as applicable to § 922(g)(1) as to § 922(g)(8)," and that "[i]f, as *Rahimi* holds, the government can disarm individuals who threaten others' safety, and felons are deemed threatening, as the fact of § 922(g)(1)'s passage implies, then there is no constitutional problem with the law – it is consistent with 'tradition'"); *United States v. McGraw*, 2024 WL 3904618, at *13 (N.D. Ill. Aug. 22, 2024) (holding that § 922(g)(1) does not violate the Second Amendment because it "is consistent with the Nation's historical tradition of firearm regulation" and "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms"); *United States v. Razo*, 2024 WL 3291762, at *3 (N.D. Ind. July 3, 2024) (same principle).  The Court **DENIES** Mr. Polk's Motion to Dismiss Count 6 of the Indictment.

## V.
## CONCLUSION

For the foregoing reasons, the Court **DENIES** Mr. Polk's Motion to Dismiss. [29.] Trial on all charges will proceed as scheduled on December 2, 2024.

Date: 9/17/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**